UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

UNITED STATES OF AMERICA     *     CRIMINAL NO. 2:18-CR-00355-01

VERSUS     *     UNASSIGNED DISTRICT JUDGE

ERIC RICHARD     *     MAGISTRATE JUDGE KAY

_____

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS

_____

TODD S. CLEMONS
Bar Roll No. 18168

JANET D. MADISON
Bar Roll No. 37495

*Attorneys for Defendant*

# **TABLE OF AUTHORITIES**

## **CASES**

*Illinois v. Caballes,* 543 U.S. 405 (2005)

*Katz v. United States*, 389 U.S. 347 (1967)

*Rodriguez v. United States.*, 135 S. Ct. 1609 (2015)

*Terry v. Ohio. Terry v. Ohio*, 392 U.S. 1 (1968)

*U.S. v. Andres*, 703 F. 3d 828 (5th Cir. 01/03/13)

*U.S. v. Jeffers*, 342 U.S. 48 (1951)

*U.S. v. Shabazz,* 993 F.2d 431, 434 (5th Cir.1993)

*U.S. v. Sokolow*, 490 U.S. 1 (1989)

## **CONSTITUTION**

U.S. Const. amend. IV

## **ISSUES PRESENTED**

1. Whether actions by the defendant gave rise to reasonable suspicion that would justify the officer prolonging the traffic stop beyond the time necessary to investigate the traffic violation.

2. Whether Trooper Leger had probable cause under the Fourth Amendment of the United States Constitution to search Mr. Richard's vehicle after defendant refused to give consent to search.

##  I.    FACTS

On or about October 25, 2017 Eric Richard was traveling east on I-10 when he was stopped by Trooper Luke Leger with Louisiana State Police.  At the time of the stop, Mr. Richard was traveling the speed limit and had not committed any traffic violations.  However, Trooper Leger told Mr. Richard that he had stopped him because he was following too close behind a pickup truck and because his license plate was obstructed in violation of Louisiana law.  The alleged violations were not captured on Trooper Leger's dash camera video.  After explaining to Mr. Richard why he stopped him, Tropper Leger then began to question Mr. Richard about where he was coming from and where he was employed.  After Mr. Richard answered his questions, Trooper Leger then requested that Mr. Richard provide him with his driver's license, registration, and proof of insurance.  Mr. Richard complied and provided the officer with the requested documents.  Trooper Leger then went on to ask Mr. Richard who the vehicle belonged to and whether he had ever been arrested before.  After Mr. Richard informed the officer that he had been arrested before, Trooper Leger then proceeded to ask him what charges he had been arrested for and if he had ever been "locked up."  After questioning defendant, the officer asked if he could "look" in the vehicle, and defendant told him that he could look through the window of the vehicle.  Trooper Leger proceeded to look through the back window of the vehicle.  He then told defendant that he would check his information and let him go.  However, before checking defendant's information, the officer asked defendant if he had "any drug charges," and whether defendant minded if he looked in the trunk of the vehicle.  Defendant opened the trunk and allowed Trooper Leger to look inside.  After looking inside of the trunk and not finding anything, the officer walked back to the back window of the vehicle and asked defendant if he could look in the bag that was on the floor of the back seat.  Defendant told the officer that the bag contained his work clothes.  Trooper then told defendant that he seemed to get nervous when

asked about the bag and asked him if there was anything illegal in the bag. Again, defendant told him that the bag contained his work clothes. Trooper Leger then instructed defendant to remove the bag from the car, at which time, Trooper Leger grabbed the bag and placed it on the trunk of the car making the statement that the bag was heavy and asked if there was a gun inside. After defendant refused to give consent for the officer to search the bag, the officer picked the bag up again and placed it back inside of the vehicle. It was not until then that Trooper Leger called defendant's information in to dispatch. While waiting for dispatch to report back on defendant's information and whether he had any active bench warrants, Trooper Leger informed defendant that he was going to walk a K-9 around the vehicle. Defendant asked the officer what probable cause he had to justify the K-9 search. The officer responded that defendant got really nervous when he asked him about the bag and that he did not need probable cause to walk the dog around the vehicle.

The officer then walked a K-9 around the vehicle twice and informed defendant that the K-9 allegedly alerted officers that drugs were inside. The vehicle was searched and allegedly cocaine was seized from the bag that was inside of the vehicle. Defendant was detained during the traffic stop for 13 minutes before officers walked the K-9 around the vehicle.

## II.     LAW AND ARGUMENT

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. This protection extends to vehicle stops and temporary detainment of a vehicle's occupants. *United States v. Shabazz,* 993 F.2d 431, 434 (5th Cir.1993). The standard for evaluating a challenge to a routine warrantless stop for violating traffic laws is

the two-step formulation articulated in *Terry v. Ohio*. *Terry v. Ohio*, 392 U.S. 1 (1968). The court must first determine whether the stop was justified at its inception. *U.S. v. Andres*, 703 F. 3d 828 (5th Cir. 01/03/13). If the initial stop was justified, it must then be determined whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place. *Id*. For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. *Andres*, 703 F.3d at 832. In order to further detain a suspect beyond the time needed to investigate the original suspicion, the officer must have articulable facts giving rise to reasonable suspicion of another crime to justify further detention of the suspect.

Courts have long held that traffic stops that violate these rules of law are unconstitutional and a violation of the Fourth Amendment. More recently, the United States Supreme Court ruled in *Rodriguez v. United States* that a detention for a traffic stop may not be prolonged beyond the reasonable duration to investigate the purpose of the stop, without reasonable suspicion of some other crime. *Rodriguez v. U.S.*, 135 S. Ct. 1609 (04/21/15). In *Rodriguez*, the individual was pulled over by a police officer for driving on the shoulder of a highway. The officer issued a ticket and settled all of the matters dealing with the initial stop. The officer then asked if he may conduct a K-9 sniff of the vehicle, and the defendant said no. The officer then asked the defendant to wait for another officer to arrive, about **seven or eight minutes** later. When the other officer arrived, a K-9 sniff was instigated and the dog alerted to the trunk of the vehicle. In the *Rodriguez* case, the court found that a law enforcement officer may not detain an individual in a traffic stop for a longer period in order to conduct a K-9 sniff investigation unless there is individualized reasonable suspicion to prolong the stop for that reason.

### A. The Officer Did Not Have Reasonable Suspicion to Stop Defendant.

In the present case, the traffic stop does not satisfy the formula established in *Terry*. First, the stop was unjustified. The officer did not have an objectively reasonable suspicion to stop the defendant. The defendant was operating his vehicle on the roadway in a safe manner and had violated no traffic laws at the time that he was stopped. The reasoning articulated by the officer as the reason for the stop was fabricated. The officer claims to have stopped defendant because he was traveling too close to another vehicle and because his license plate was obstructed. However, the alleged traffic violations were not captured on Trooper Leger's dash camera.

### B. The Officer Unlawfully Extended the Traffic Stop.

The officer in this case did not have reasonable suspicion to stop defendant. However, if the Court deems the initial stop as justified, the officer's subsequent actions were not reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place. As mentioned earlier, the officer stated that he stopped defendant due his license plate being obstructed and him following too close to another vehicle. After pulling defendant over, the officer requested defendant's driver's license, insurance documents, and registration, all of which defendant supplied to the officer. Defendant had complied with all of the officer's request to produce the requested documentation. The officer should have checked defendant's information, issued defendant a traffic citation and completed the traffic stop. However, after receiving the requested documents, instead of calling defendant's information in or writing him a ticket, Trooper Leger began to question defendant about his criminal history and whether he had been incarcerated before. Trooper Leger's line of questioning was in no way related to the scope of the initial reason for stopping defendant. He then went on to ask defendant if he could search his vehicle, whether he had any prior drug charges, and whether he could look in the trunk of the

vehicle. Again, Trooper Leger's actions were not remotely related to the reason he allegedly stopped defendant in the first place. **The traffic stop became excessive when, as an alternative to writing the citations for the alleged traffic violations, the officer delayed the detention by questioning defendant about unrelated matters.** It is clear that Trooper Leger was in search of narcotics, and the alleged traffic violations were simply a guise to stop defendant's vehicle to find out if there were any in that vehicle.

As mentioned earlier, under *Rodriguez*, a law enforcement officer may not detain an individual in a traffic stop for a longer period in order to conduct a K-9 sniff investigation unless there is individualized reasonable suspicion to prolong the stop for that reason. The officer must have articulable knowledge of particular facts which, in conjunction with reasonable inferences drawn therefrom, provide reasonable grounds to suspect the detainee of criminal activity. *Terry v. Ohio,* 392 U.S. 1 (1968). The officer must "articulate something more than an 'inchoate and unparticularized suspicion or "hunch."'" *U.S. v. Sokolow*, 490 U.S. 1 (1989) (***citing*** *Terry v. Ohio,* 392 U.S. 1 (1968)). See also *United States v. Sharpe,* 470 U.S. 675 (1985) ("The scope of the detention must be carefully tailored to its underlying justification."). Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate that purpose." *Id.* See also *Caballes,* 543 U.S. at 407 (Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed).

In the present case, the officer unreasonably prolonged the traffic stop. Defendant was detained for twelve minutes before conducting the K-9 sniff investigation. All matters dealing with the initial stop should have been settled by then. To detain defendant any longer than necessary, the officer was required to have individualized reasonable suspicion of criminal activity, which he did not have. It was not sufficient for the officer to act on a "hunch" that

defendant may be engaged in criminal activity. The officer's alleged reasonable suspicion arose when he questioned defendant about the bag in the back seat. Trooper Leger claimed defendant became nervous upon him questioning him about the contents of the bag. However, defendant had already been detained for five minutes and questioned about matters that were completely unrelated to the traffic stop before Trooper Leger began to question him about the contents of the bag. Again, of note is that immediately upon stopping defendant after requesting his driver's license, insurance documents, and registration, the officer did not check that information and issue traffic citations. Instead he immediately—without any articulable facts giving rise to reasonable suspicion that any criminal activity other than traffic violations had occurred-- began to question defendant about his criminal history, whether he had any drug charges, and whether he had ever been locked up. Furthermore, a driver getting nervous after being pulled over by the police hardly constitutes reasonable suspicion sufficient to justify prolonging the traffic stop to continue questioning defendant and conducting a K-9 sniff investigation.

### III.   C ONCLUSION

"[S]earches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). Where a search is conducted without a warrant, the prosecution bears the heavy burden of proving the facts that justify the search under one of the recognized exceptions. United States v. Jeffers, 342 U.S. 48, 51 (1951). Here, the prosecution cannot meet its burden.

For the foregoing reasons, defendant moves to suppress the evidence and any statements made by him to law enforcement. The officer did not have a reasonable suspicion that the defendant was engaged in any illegal activity at the time he was apprehended and detained, and

any investigative detention resulting from this traffic stop exceeded the permissible limits of the stop and rendered it an illegal seizure.  The traffic stop in the present case was a violation of defendant's Fourth Amendment rights and is the very sort of law enforcement behavior that the exclusionary rule is meant to discourage.

**WHEREFORE**, the defendant, **ERIC RICHARD**, prays that this Motion to Suppress the Evidence  be maintained and that the evidence sought to be used by the United States Government in this matter or any related proceedings be ordered suppressed in its entirety by this Honorable Court, and that the United States Government, through its authorized representative, be prohibited from introducing same during the trial of this matter and also be prohibited from making reference thereto during the trial of this matter.

RESPECTFULLY SUBMITTED:

**TODD CLEMONS & ASSOCIATES**
**A PROFESSIONAL LAW CORPORATION**

S/Todd S. Clemons_____
**TODD S. CLEMONS, Bar Roll No. 18168**
**JANET D. MADISON, Bar Roll No. 37495**
1740 Ryan Street
Lake Charles, LA 70601
PH: (337) 477-0000
FAX: (337) 477-4580

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 22, 2019, a copy of the foregoing Memorandum of Law in Support of Motion to Suppress was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's Electronic Filing System.

s/TODD S. CLEMONS
TODD S. CLEMONS (LA. BAR NO. 18168)
