UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 2:18-CR-00355-01 |
| VERSUS | * | UNASSIGNED DISTRICT JUDGE |
| ERIC RICHARD | * | MAGISTRATE JUDGE KAY |

**OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Now into Court comes defendant, Eric Richard, who requests that the District Court review and reverse the Magistrate's Report and Recommendation denying the defendant's Motion to Suppress Evidence for the reasons set forth below.  The Report and Recommendation denying Defendant's Motion to Suppress Evidence should not be followed and Defendant's Motion should be granted.

### A.  *De Novo Review*

As a preliminary matter, under Federal Rule of Criminal Procedure 59(b), the district judge must consider any objections to a Magistrate's Recommendation de novo. See Fed. R. Crim. P. 59(b)(3).

### B.  Unjustified Traffic Stop

The Magistrate concluded that the traffic stop was justified at its inception because Trooper Leger cited two traffic infractions as his reason for initiating the traffic stop—following too close and obstruction of license plate.  However, the Magistrate concluded that defendant's license plate was not obstructed as contemplated by the statute.  Therefore, a discussion of the alleged violation of obstruction of license plate is not necessary.

The Magistrate did however conclude that defendant did commit the traffic violation of

following too close.  In her report, the Magistrate stated that because Trooper Leger's testimony that defendant was following the vehicle ahead of him too closely is uncontroverted, it satisfies the first prong of the Terry analysis.  We disagree.  The Government has the burden of proving that the officer had reasonable suspicion to initiate the traffic stop.  They failed to do so in this case.  As mentioned at the hearing, Trooper Leger made no effort to document the alleged following too close violation.  He did not produce video showing Mr. Richard committing the alleged violation.  In short, Trooper Leger did not bother to ensure that the legal justification for the stop was "objectively grounded.".  *United States v. Miller*, 146 F. 3d 274 (5th Cir. 1998)(citing Whren, 517 U.S. at 812).  The only evidence that the Court has to rely on is Trooper Leger's testimony that the traffic violation occurred.

The Magistrate also stated that the dash camera footage substantiates Trooper Leger's testimony because it shows the vehicle changing lanes from the center lane into the right hand lane moving directly in front of what appears to be a truck or a flatbed… the flatbed trailer that Trooper Leger referenced.  The defense disagrees here as well.  The dash camera at no point showed defendant following the flat bed trailer.  Simply because the dash camera shows defendant moving from the center lane to the right lane in front of the flat bed trailer does not substantiate Trooper Leger's testimony that a traffic infraction had occurred prior to that.  It simply substantiates the testimony that a flat bed trailer was on the roadway at that time.

The traffic stop in this case does not meet the first prong of *Terry*, and was simply a guise to stop defendant's vehicle in search of narcotics.

### C.  No Reasonable Suspicion

In denying the defendant's Motion to Suppress Evidence, the Magistrate also held that the traffic stop satisfied the second element of the Terry framework.  *Terry v. Ohio*, 392 U.S. 1

(1968). The Magistrate further held that Trooper Leger had reasonable suspicion of additional criminal activity. As set forth below, defendant reasserts that Trooper Leger's subsequent actions were not reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place, and therefore, the stop was illegally prolonged. As such, the Magistrate's ruling should not be followed.

In both *Arizona v. Johnson* and *Illinois v. Caballes*, the United States Supreme Court "concluded that the Fourth Amendment tolerated certain unrelated investigations that did not lengthen the roadside detention." *Arizona v. Johnson*, 555 U.S. 323 (2009); *Illinois v. Caballes*, 543 U.S. 405 (2005). However, in *Caballes,* the Court held that a "traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a warning ticket. 543 U.S., at 407. The Court then went on to state that "[a] seizure remains lawful only "so long as [unrelated] inquiries do not measurably extend the duration of the stop."" *Johnson*, 555 U.S., at 333. "Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop."" *Caballes,* 543 U.S., at 408. "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Delaware v. Prouse,* 440 U.S. 648 (1979).

After pulling defendant over, the officer requested defendant's driver's license, insurance documents, and registration. Defendant produced each of the requested items except the registration. Instead, defendant provided the title to the vehicle. The officer should have checked defendant's information, issued defendant a traffic citation and completed the traffic stop. However, after receiving the requested documents, instead of calling defendant's information in or writing him a ticket, Trooper Leger began to question defendant about his

criminal history and whether he had been incarcerated before. Trooper Leger's line of questioning was in no way related to the scope of the initial reason for stopping defendant. He then went on to ask defendant if he could search his vehicle, whether he had any prior drug charges, and whether he could look in the trunk of the vehicle. Again, Trooper Leger's actions were not remotely related to the reason he allegedly stopped defendant in the first place. The traffic stop became excessive when, as an alternative to writing the citations for the alleged traffic violations, the officer delayed the detention by questioning defendant about unrelated matters.

The Government argued that Trooper Leger had reasonable suspicion, and therefore, his prolonging the traffic stop to question defendant regarding matters unrelated to the reason for the stop is justified. The Government's argument has no merit. At the suppression hearing, Trooper Leger testified that prior to activating his emergency lights and pulling defendant over, he checked the vehicle's license plate on the computer inside his unit on a system that tracks vehicles as they cross the border between Louisiana and Texas on Interstate 10. According to Trooper Leger, the system registered the vehicle crossing from Louisiana into Texas earlier that day and later crossing from Texas into Louisiana a short time before being pulled over. Trooper Leger further testified that upon stopping defendant, he asked him if he had traveled to Texas, and defendant stated that he had not. This response, according to Trooper Leger, gave rise to reasonable suspicion, which provided him with a reason to ask more questions and inquire into whether some other form of criminal activity was taking place.  Trooper Leger's testimony regarding the computer search of the vehicle's license plate is simply not credible. He failed to make any mention of the alleged computer search or its results in his police report. If in fact these were the circumstances that gave rise to reasonable suspicion, Trooper Leger should have

documented such in his police report. He failed to do so, and again, wants the Court to rely on his testimony alone. Additionally, the Government failed to provide any evidence of the alleged computer search or its results at the suppression hearing.

According to Trooper Leger's testimony, other indicators of criminal activity included:

- Mr. Richard's presence in a drug trafficking corridor (Interstate 10 eastbound)
- Driving away from a major drug distribution hub (Houston, Texas)
- Nighttime travel
- Walking away from the vehicle and toward Trooper Leger's unit
- Mr. Richard's allegedly clammy hand when he shook Trooper Leger's hand
- No Registration for the Vehicle, only title
- Claiming to be the owner of the car dealership despite also claiming to work for Global in Vinton
- Lack of an accurate or detailed description of his job at Global

Contrary to representations made by Trooper Leger, these hardly constitute reasonable suspicion sufficient to justify prolonging the traffic stop to continue questioning defendant. Defendant was detained for twelve minutes before conducting the K-9 sniff investigation. All matters dealing with the initial stop should have been settled by then. It was not sufficient for Trooper Leger to act on a "hunch" that defendant may be engaged in criminal activity. *U.S. v. Sokolow*, 490 U.S. 1 (1989) (***citing*** *Terry v. Ohio*, 392 U.S. 1 (1968)). Of note is that the dash camera video showed, and Trooper Leger confirmed at the suppression hearing, that defendant asked him what was the "probable cause for all this." Trooper Leger responded mentioning only defendant's alleged excessive nervousness. It was only after being prepped for the suppression hearing did Leger make any mention of the above mentioned list of factors that supposedly gave rise to reasonable suspicion.

The Government also argued that prolonging the traffic stop was justified because Trooper Leger was waiting for dispatch to check defendant's information and inform him of whether defendant had any warrants. This argument is also without merit. Trooper Leger testified that he

did not call defendant's information in to dispatch until approximately 7 minutes after stopping defendant. Immediately upon pulling defendant over, as an alternative to calling his information in to dispatch and writing the citations for the alleged traffic violations, he began questioning defendant about unrelated matters. Trooper Leger testified that when he finally decided to call the information in to dispatch, he told dispatch to check the information "when you get a chance." Trooper Leger had no sense of urgency and his main concern was continuing to question defendant about unrelated matters.

Lastly, Trooper Leger claimed defendant became nervous upon him questioning him about the contents of the bag. However, as mentioned, defendant had already been detained for several minutes and questioned about matters that were completely unrelated to the traffic stop before Trooper Leger began to question him about the contents of the bag. ***Therefore, the traffic stop had already been unlawfully prolonged prior to Trooper Leger questioning defendant about the contents of the bag.***

### D. Conclusion

"[S]earches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Where a search is conducted without a warrant, the prosecution bears the heavy burden of proving the facts that justify the search under one of the recognized exceptions. *United States v. Jeffers*, 342 U.S. 48, 51 (1951). Here, the prosecution failed to meet its burden.

For the foregoing reasons, defendant moves to suppress the evidence. The officer did not have reasonable suspicion that the defendant was engaged in any illegal activity at the time he was apprehended and detained, and any investigative detention resulting from this traffic stop

exceeded the permissible limits of the stop and rendered it an illegal seizure.  The traffic stop in the present case was a violation of defendant's Fourth Amendment rights.

                              RESPECTFULLY SUBMITTED:

**TODD CLEMONS & ASSOCIATES**
**A PROFESSIONAL LAW CORPORATION**

_s/Todd S. Clemons_____
**TODD S. CLEMONS, Bar Roll No. 18168**
**JANET D. MADISON, Bar Roll No. 37495**
1740 Ryan Street
Lake Charles, LA 70601
PH: (337) 477-0000
FAX: (337) 477-4580

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on August 7, 2019, a copy of the foregoing Objection to Magistrate's Report and Recommendation Denying Defendant's Motion to Suppress Evidence was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's Electronic Filing System.

                                          s/TODD S. CLEMONS
                                          TODD S. CLEMONS (LA. BAR NO. 18168)